**W. A. BURCH, Plaintiff,**

v.

**MILNE TRUCK LINES, INC., Defendant.**

**George W. Plavec, Intervenor.**

**Civ. A. No. 7148.**

United States District Court
D. Colorado.
Aug. 29, 1961.

**1. Method of arriving at distribution:**

| | |
|---|---:|
| On hand with Belco at commencement of suit | $63,099.75 |
| Belco paid Torgeson for sale of leases | 15,000.00 |
| Gross proceeds from sale of leases | $78,099.75 |

Expenses:

| | | |
|---|---:|---:|
| Torgeson's expenses, title litigation: | $14,451.41 | |
| Markey and McElroy, cash due per agreement: | 15,000.00 | |
| Markey and McElroy, rental payments: | 1,000.50 | |
| Total | $30,451.91 | |
| Net proceeds: | | $47,647.84 |

Balance to be disbursed:

| | | |
|---|---:|---:|
| One-fourth to Markey & McElroy | | $11,911.96 |
| Three-fourths to Torgeson: | $35,735.88 | |
| Credit of prior payment: | 15,000.00 | |
| Balance due Torgeson | | $20,735.88 |

Recapitulation:

| | | |
|---|---:|---:|
| Due Torgeson $20,735.88 | payment for leases | |
| 14,451.41 | payment litigation expenses | $35,187.29 |
| Due McElroy & Markey: $15,000.00 | on contract | |
| 1,000.50 | on rentals | |
| 11,911.96 | payment for sale | $27,912.46 |
| Total To Be Expended: | | $63,099.75 |

Hardesty & Juhan, Valjean H. Mc-Curdy, Denver, Colo., and Nelson, Harding & Acklie, Duane W. Acklie, Lincoln, Neb., for plaintiff.

Holland & Hart, Gordon G. Greiner, Warren L. Tomlinson, Denver, Colo., and Skeen, Worsley, Snow & Christensen, Wood R. Worsley, Salt Lake City, Utah, for defendant.

Holme, Roberts, More & Owen, Joseph W. Morrissey, Jr., Donald C. McKinlay, Denver, Colo., and Charles W. Singer, Chicago, Ill., for intervenor.

ARRAJ, Chief Judge.

This matter involves a suit for specific performance by plaintiff against defendant to require defendant to sell and transfer to plaintiff certain operating authority issued to the defendant by the Interstate Commerce Commission, and a counterclaim and cross-claim by intervenor against plaintiff and defendant asking dismissal of plaintiff's complaint and requiring defendant to perform its option agreement with intervenor. The parties shall be referred to as Burch (plaintiff), Milne (defendant) and Plavec (intervenor).

On August 31, 1960, Burch and Milne entered into an agreement in which Burch was given an exclusive franchise to operate Milne's trucking permit transporting packing-house and dairy products to and from Denver and certain points in Arizona and California.

Paragraph 7 of that agreement sets forth the terms of the option agreement upon which Burch's claim in this action is based. This paragraph reads, in pertinent part, as follows:

"7. If Milne, at any time during the term of this agreement or any renewal or extension thereof and within six (6) months thereafter, receives a bona fide offer to purchase the Certificate of Convenience and Necessity specifically referred to hereinabove or for an agency agreement similar in subject matter to the within agreement and Milne desires to sell said operating rights or

enter into said agency agreement and under the terms of such offer, Milne agrees to give Burch immediate notice in writing of such bona fide offer, setting forth all of the terms and provisions thereof, Burch shall have the first option to acquire said operating rights within sixty (60) days after said notice, * * * on the terms and conditions of any such offer."

Paragraph 4 of the agreement is also of particular importance to this proceeding. It reads in pertinent part as follows:

"4. Milne shall have the right to cancel this agreement upon thirty days written notice to Burch in the event that the amount of money retained by Milne under this agreement in any full calendar month commencing * * * November 1, 1960, shall be less than $500.00."

Milne entered into an option agreement for the operating rights with Plavec on April 4, 1961.

Pursuant to paragraph 4 of the agreement above-quoted, Milne, on April 13, 1961, notified Burch by letter that "the agreement is hereby cancelled effective thirty (30) days from date hereof."

On April 18, 1961, Milne gave Burch written notice of the option agreement between Milne and Plavec. This was done even though Milne had previously served notice of cancellation on Burch.

On April 19, 1961, Burch by letter notified Milne of his intention to exercise the option contained in the agreement of August 31, 1960. Accompanying the notice was a check for $2,000 and a demand "for the execution of a written contract on the same terms and conditions contained in the Plavec offer." Milne returned the check the same day and refused to execute a contract transferring the operating rights to Burch. Burch made four subsequent tenders all of which were refused by Milne. The only reason given by Milne for its refusal was that "Defendant was not prepared at the moment of tender to execute such agreement and to accept tender."

The option agreement between Milne and Plavec provided for exercise by optionee within ninety days. Plavec attempted to exercise his option on June 30, 1961, within the ninety day period. Milne refused to transfer the operating rights to Plavec.

At the present time there are motions by plaintiff Burch for summary judgment and judgment on the pleadings before the Court. It is clear from the record and the parties are all agreed that there are no unresolved issues of fact before the Court at this time. Hence, a summary determination is proper.

It is the position of Burch that at the time he exercised his option, pursuant to the agreement of August 31, 1960, that agreement was still in full force and effect. Plavec contends that the agreement of August 31, 1960, had been effectively cancelled by Milne prior to the exercise of the option by Burch. In addition, Plavec argues that because Burch had failed to perform under the agency agreement he is estopped from claiming specific performance of a part thereof. Finally, Plavec asserts that the option agreement between Milne and him did not constitute a bona fide offer as contemplated by the terms of the Burch-Milne agreement.

At this time Milne has taken the position that it is ready and willing to transfer the operating rights to whichever of the optionees this Court determines is entitled thereto.

 Regarding the question of cancellation, the Burch-Milne agreement provides for cancellation on thirty days notice. The notice of cancellation itself states that it shall be effective "thirty days from date hereof." Any attempt by Milne to cancel on less than thirty days notice would have amounted to a breach of the agreement. Carleno Coal Sales Co. v. Ramsay Coal Co., 1954, 129 Colo. 393, 270 P.2d 755. The cancellation notice is dated April 13, 1961. The letter from Burch to Milne exercising the

former's rights under the option agreement is dated April 19, 1961. It was received by Milne on that date. Obviously, the cancellation had not become effective at that time.

Milne's conduct after April 13, 1961, indicates that it did not consider the Burch-Milne agreement effectively cancelled. Milne proceeded to give Burch notice of the Plavec option as required by its agreement with Burch. Furthermore, the Milne-Plavec agreement recognized the existence of outstanding rights in Burch. Paragraph 6 of that agreement contains the following:

> "6. *Condition of option.* It is agreed between the parties that by virtue of an agreement dated August 31, 1960, between W. A. Burch and Seller the said W. A. Burch was granted certain agency rights and rights of first refusal on sale during the effective duration of said agreement. Seller agrees to immediately take appropriate steps for the purpose of securing the termination of said agreement and the rights of W. A. Burch thereunder, provided, however, that the within option is expressly conditioned upon the legal termination of such rights, and in the event they are not so terminated, this option shall be null and void. * * * "

From the above stated facts, the conclusion is inescapable that the agreement of August 31, 1960, between Milne and Burch was in full force and effect at the time of the exercise of the option by Burch on April 19, 1961.

Next, it must be determined whether or not the option agreement between Milne and Plavec constituted a bona fide offer as contemplated by the Milne-Burch agreement.

■ An option has been defined as a continuing offer or contract. 77 C.J.S. Sales § 33, p. 651; 17 C.J.S. Contracts § 100 e, p. 451; 1 Williston on Contracts, Sec. 61A, p. 199.

The case of Brenner v. Duncan, 1947, 318 Mich. 1, 27 N.W.2d 320, involved a suit for specific performance of an option agreement in a lease. The Court held that when the lessor fixed the price at which he was willing to sell, the option, at that time, became a definite offer which, when accepted by the lessee-optionee, ripened into a mutually binding contract, specifically enforceable. See also Slaughter v. Mallet Land & Cattle Co., 5 Cir., 1905, 141 F. 282, 292 and Brazeal v. Bokelman, 8 Cir., 1959, 270 F.2d 943, 948.

■ The applicability of the Brenner case, supra, to the instant case seems obvious. In the case at bar Milne, by entering into the option agreement with Plavec obligated itself to sell the operating rights on terms certain at a specific price conditioned only upon the termination of the rights of Burch. The Milne-Burch agreement by its terms contemplated just such a situation. Undoubtedly, Milne interpreted the Plavec option as a bona fide offer or it wouldn't have felt compelled to notify Burch of the option agreement.

■ Plavec's contention that Burch, by failing to perform under the Milne-Burch agreement and thus giving cause for the notice of cancellation, has put himself in a position in which he should be estopped from claiming specific performance of the agreement, can be resolved by pointing out that Plavec, not being a party to the Milne-Burch agreement, is not in a position to raise the issue of estoppel.

■ Burch is now and has been at all times since April 19, 1961, ready, willing and able to perform under the option agreement with Milne. The latter has unqualifiedly indicated that it is willing to sell the operating rights and has further indicated the price at which it is willing to sell. Burch has exercised his option rights in strict compliance with the terms of the agreement. Thus, there appears to be no valid reason why the Court should not order Milne to execute a contract transferring the operating rights to Burch, subject, of course to I.C.C. approval.

For the reasons stated plaintiff's motion for a Summary Judgment is granted, and plaintiff is directed to submit an appropriate Order.